695 A.2d 335

MIDLANTIC BANK, N.A., SUCCESSOR BY MERGER TO MIDLANTIC NATIONAL BANK/SOUTH, PLAINTIFF–APPELLANT/CROSS–RESPONDENT, v. JOSEPH M. WOOD, THE BOROUGH OF SOUTH TOMS RIVER AND JOHN DOE (FICTITIOUS), DEFENDANTS–RESPONDENTS, JOE'S PRECISION, DEFENDANT–RESPONDENT/CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 18, 1997—Decided June 23, 1997.

Before Judges STERN, HUMPHREYS and WECKER.

*Hillary Veldhuis* argued the cause for appellant (*Lyons & Doughty*, attorneys; *Ms. Veldhuis*, on the brief).

*Terry F. Brady* argued the cause for respondent Joe's Precision (*Mulvaney, Coronato & Brady*, attorneys; *Mr. Brady*, on the brief).

*Elizabeth Larkins Mackolin* argued the cause for respondent Borough of South Toms River (*Dasti, Murphy & Wellerson*, attorneys; *Craig Wellerson*, on the brief).

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

At the request of the Borough of South Toms River, Joe's Precision towed and stored an abandoned car on April 27, 1995. Midlantic Bank held a perfected security interest in the car. Midlantic demanded that the car be turned over to it. Joe's Precision refused to release the car because there was an outstanding balance of $3,323.20 for the towing and storage.

In July 1995, Midlantic filed suit. On October 4, 1995, the parties agreed that Midlantic would pay the Borough $400 in order to permit a sale in accordance with the Uniform Commercial Code ("UCC"). The amount of $3,323.20 was to be taken from the proceeds of the sale and held in escrow while the parties sought a judicial determination as to the priority of their claims. A consent order was entered to that effect. Midlantic states that the car was sold on October 9, 1995 for $14,300 and that approximately $23,000 was then due Midlantic on its secured claim.

Midlantic moved for summary judgment. The judge construed the relevant statutes to require Midlantic to pay Joe's Precision's reasonable storage fees which the judge determined to be $1,320 for sixty days of storage. An order was entered requiring Midlantic to pay Joe's Precision that sum out of the escrowed funds.

Midlantic appeals, contending that its liability is limited to $400 under *N.J.S.A.* 40:48–2.50 and that the court erred in concluding that "payment should be compelled due to delay in Midlantic's exercise of its rights."

Joe's Precision cross-appeals, contending that the judge should have awarded it one hundred forty days worth of storage charges plus a $65 tow charge and State sales tax.

We have thoroughly reviewed the record. We conclude that the security interest of the bank is superior to the lien claim of Joe's Precision. We reverse and remand on the appeal and affirm on the cross-appeal.

I

A garage keeper has a statutory lien upon a motor vehicle for, among other things, the cost of storing the motor vehicle. *N.J.S.A.* 2A:44-21. The statute provides that the lien is not superior to, nor shall it "affect" a prior perfected security interest. *Ibid.; see also N.J.S.A.* 12A:9-310.

Joe's Precision relies on *N.J.S.A.* 39:10A-2 which provides that the owner or party entitled to reclaim possession of an abandoned automobile may do so "upon payment of the reasonable costs of removal and storage of the vehicle." *Ibid.; see generally N.J.S.A.* 39:10A-1 to -20 (the Abandoned and Unclaimed Motor Vehicles Act). However, another section of the same statute, *N.J.S.A.* 39:10A-20, preserves the superiority of the secured creditor. This section provides that the Act is "an additional remedy" which "shall not be construed to supersede procedures provided under another act, and shall not be deemed to supersede or alter the priority of any perfected lien or security interest." *Ibid.*

The superiority of a perfected security interest over that of a garage keeper is well settled in New Jersey. In *Hackensack Trust Co. v. Alvarez,* 66 *N.J.* 275, 330 *A.*2d 359 (1974), the garage keeper not only stored the car but performed repairs. Thereafter, the holder of the security interest demanded the car. The garage keeper refused to release the car until its bill had been paid. By the time the litigation had ended, the car had only a nominal value. The Supreme Court held that the security interest was superior and affirmed the secured creditor's judgment against the garage keeper for the market value of the car. *Id.* at 276, 330 *A.*2d 359;

*see also Associates Commercial Corp. v. Wallia,* 211 *N.J.Super.*
231, 233, 511 *A.*2d 709 (App.Div.1986) (a perfected security inter-
est has priority over a garage keeper's lien).

We perceive no intention by the Legislature in adopting the
Abandoned and Unclaimed Motor Vehicles Act to overturn the
long established superiority of a perfected security interest over a
garage keeper's lien. If there had been such an intention, the
Legislature would not have specifically preserved the priority of a
perfected lien or security interest. *See N.J.S.A.* 39:10A–20.

Joe's Precision contends that the priority of a security interest
over a garage keeper's lien is unfair in this case because it is
performing a public service in removing abandoned vehicles and
storing them. If there had been no perfected security interest,
then Joe's Precision would have been entitled to receive $400 from
the municipality and would also have been able to sell the car at
an auction sale pursuant to *N.J.S.A.* 39:10A–9(a)(2). The Bank
responds that permitting its superior status to be diluted by
towing and storage charges would be unfair to banks and other
secured creditors.

We will not attempt to resolve the fairness issue. The language
of the statute is plain. In view of this language, we have no
alternative but to hold that the secured creditor's interest is
superior to that of a garage keeper who tows and stores an
abandoned vehicle. Any unfairness in the statute is a matter for
the Legislature to redress.

## II

Joe's Precision maintains that Midlantic did not diligently
notify it of Midlantic's lien and should therefore be denied relief.
Midlantic maintains that it acted with due diligence by notifying
Joe's Precision within thirty days after it became aware that Joe's
Precision had the car. The material facts appear to be in genuine
dispute on this issue and therefore summary judgment may not be
granted. If Joe's Precision establishes at trial the grounds for an
estoppel, it is entitled to receive out of the escrowed funds the

reasonable costs of removal and storage. We agree with the judge that $1,320 is a fair estimate of those costs.

On the appeal, we reverse and remand for further proceedings consistent with this opinion. We affirm on the cross-appeal.